**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**KENYA THOMPSON**                                                    **PLAINTIFF**


**V.**                            **CASE NO. 4:18-CV-905 (SWW)**


**UNION PACIFIC RAILROAD COMPANY**                        **DEFENDANT**

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S BRIEF IN OPPOSITION**
**TO PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY**

Defendant Union Pacific Railroad Company (Union Pacific), by and through its undersigned

counsel, CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C., respectfully submits its Brief in

Opposition to Plaintiff's First Motion to Compel Discovery. As discussed throughout this Brief,

Plaintiff's Motion to Compel should be denied in full.

<div style="margin-left:50%;">

Respectfully submitted,

Abtin Mehdizadegan (Ark. Bar No. 2013136)
**CROSS, GUNTER WITHERSPOON**
  **& GALCHUS, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: (501) 371-9999/Fax: (501) 371-0035
E-mail: abtin@cgwg.com

</div>

245334

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................I

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND .......................................................................................1

    A.   Background Regarding Plaintiff's Complaint and the Narrow Scope of Issues for Which Discovery is Required. ........................................................................ 1

    B.   Overview of Plaintiff's Written Discovery Requests and Her Half-Hearted Attempt to Confer in Good Faith ........................................................................ 3

    C.   Plaintiff's Overbroad and Burdensome Rule 30(b)(6) Deposition Notice Contains Thirty-Two Separate Topics that Would be Impossible for Any Witness or Group of Witnesses to Reasonably Address.................................... 4

III. ARGUMENT ........................................................................................................5

    A.   Plaintiff's Motion to Compel Additional Responses to her First Set of Discovery Requests Should Be Denied Because Plaintiff Failed to Satisfy Local Rule 7.2(g)'s Requirement to Confer in Good Faith on *Specific* Discovery Disputes Prior to Seeking the Court's Intervention. ......................................... 8

    B.   Even if Plaintiff's May 8, 2019 Letter Satisfied her Good Faith Conferral Obligations, the Court Should Nevertheless Deny Plaintiff's Motion to Compel Additional Written Discovery Responses Because Plaintiff Provided No Substantive Argument to Address Union Pacific's Specific Objections to Each Disputed Request. ......................................................................................... 11

        1.   Union Pacific's Objections to Interrogatory Nos. 11 and 12 and Request Nos. 21 and 28 Should be Sustained Because the Information Requested is Neither Relevant nor Proportional to the Needs of this Litigation Under Rule 26(b)(1).......................................................................................... 12

        2.   Plaintiff's Attempt to Compel Additional Discovery in Connection with Request Nos. 16 and 19 is Frivolous and Must be Denied. ...................... 16

        3.   "Hot Box" Reader Data, Which Plaintiff Seeks in Request No. 37, is Wholly Irrelevant to Any Issue in this Litigation. ................................................. 18

        4.   Because Union Pacific's Supplemental Response to Interrogatory No. 15 Addressed Plaintiff's Only Articulated Basis for Seeking to Compel Additional Discovery, Plaintiff's Motion Should be Denied.................... 21

5.  Plaintiff's Contentions that Union Pacific Must, in Response to Request for Production No. 30, Produce Information Protected by 49 U.S.C. § 20903, are Without Merit..................................................................................... 23

6.  Interrogatory Nos. 20 and 21 and Request Nos. 43, 44, 45, 46, and 47 are Facially Overbroad and Excessive, and Plaintiff Failed to Meet her Threshold Requirement of Establishing Relevance and Proportionality in Order to Overcome Union Pacific's Objections to These Burdensome Requests. ............................................................................................... 26

7.  Union Pacific Will Produce its Privilege Log within Five Business Days and Therefore Obviate the Need for the Court to Compel this Disclosure. ................................................................................................................ 33

C.  **Plaintiff's Rule 30(b)(6) Topics are Facially Excessive and Her Failure to Confront Union Pacific's Narrow Objections and Proposed Compromises Should Preclude the Relief Requested in Her Motion. ................................... 34**

IV.  CONCLUSION........................................................................................................41

# TABLE OF AUTHORITIES

## CASES

**Supreme Court Decisions**

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)................................................. 6

*Pierce County, Washington v. Guillen*, 537 U.S. 129 (2003)....................................... 25

**Courts of Appeal Decisions**

*Carman v. McDonnell Douglas Corp.*, 114 F.3d 790 (8th Cir. 1997)......................... 30

*Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972) ............................................... 25

*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992) ...................................... 7, 25

*Sallis v. University of Minn.*, 408 F.3d 470 (8th Cir. 2005)........................................ 30

*Semple v. Federal Exp. Corp.*, 566 F.3d 788 (8th Cir. 2009) ..................................... 30

*Servo Corp. of Am. v. Gen. Elec. Co.*, 393 F.2d 551 (4th Cir. 1968) .......................... 19

*Williamson v. Missouri Dep't of Corr.*, 740 F. App'x 513 (8th Cir. 2018)................... 9

*WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032 (8th Cir. 2011)............... 7

**District Court Decisions**

*Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154 (N.D. Cal. May 18, 2011) ...................... 40

*Barfoot v. Boeing Co.*, 184 F.R.D. 642 (N.D. Ala. 1999)............................................ 29

*Blackorby v. BNSF Ry. Co.*, 2015 WL 58601 (W.D. Mo. Jan. 5, 2015) ..................................... 29

*Carlton v. Union Pac. Ry. Co.*, 2006 WL 2220977 (D. Neb. Aug. 1, 2006)........................... 7, 15

*CFGenome, LLC v. Streck, Inc.*, 2019 WL 3969178 (D. Neb. Aug. 22, 2019)............................ 6

*Clean Earth Remediation & Const. Servs., Inc. v. Am. Int'l Grp., Inc.*, 245 F.R.D. 137 (S.D.N.Y. 2007)................ 22

*Criterion 508 Sols., Inc. v. Lockheed Martin Servs., Inc.*, 255 F.R.D. 489 (S.D. Iowa 2008) ..... 34

*Davis v. Precoat Metals, a Div. of Sequa Corp.*, 2002 WL 1759828 (N.D. Ill. July 29, 2002) ... 28

*Davis v. Union Pac. Ry. Co.*, 2008 WL 3992761 (E.D. Ark. Aug. 26, 2008) ............................... 7

*Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70 (D. Conn. 2010) .................................................... 38

*Engleman v. United States*, 2015 WL 12696094 (E.D. Ark. Sept. 24, 2015).............................. 10

*Equal Employment Opportunity Comm'n v. Am. Int'l Grp., Inc.*, 1994 WL 376052 (S.D.N.Y. July 18, 1994)......................................................................................................................... 40

*Fed. Ins. Co. v. Delta Mech. Contractors, LLC*, 2013 WL 1343528 (D.R.I. Apr. 2, 2013)......... 38

*Hawk Tech. Sys., LLC v. Oaklawn Jockey Club, Inc.*, 2015 WL 13813612 (W.D. Ark. Nov. 5, 2015).......................................................................................................................................... 10

*Heim v. BNSF Ry. Co.*, 2014 WL 6949044 (D. Neb. Dec. 8, 2014)........................... 25, 29, 30, 32

*Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997) ...................................................................... 22

*Isham v. Booneville Community Hospital*, 2014 WL 11514532 (W.D. Ark. Dec. 1, 2014) ........ 10

*Lee v. Nucor-Yamato Steel Co. LLP*, 2008 WL 4014141 (E.D. Ark. Aug. 25, 2008).................. 34

*Medicinova Inc. v. Genzyme Corp.*, 2017 WL 2829691 (S.D. Cal. June 29, 2017) ................. 6, 41

*Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D. 59 (D. Mass. 2011) .................. 34

*Onwuka v. Federal Express Corp.*, 178 F.R.D. 508 (D. Minn. 1997) .......................................... 31

*Pentel v. Shepard*, 2019 WL 3729770 (D. Minn. Aug. 8, 2019) .................................................... 8

*Reed v. Bennett,* 193 F.R.D. 689 (D. Kan. 2000)................................................................... 38, 39

*Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165 (D. Conn. 2005) ....................... 29

*Shakman v. City of Chicago*, 2014 WL 711010 (N.D. Ill. 2014)................................................... 31

*Smith v. Bradley Pizza, Inc.*, 2019 WL 2448575 (D. Minn. June 12, 2019) ................................. 7

*Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004) .................................. 12

*Switch Commc'ns Grp. v. Ballard*, 2011 WL 3957434 (D. Nev. Sept. 7, 2011).......................... 22

*Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 5786492 (D. Mass. Sept. 24, 2014) ........................................................................................................................................... 38, 40

*Union Pac. Ry. Co. v. California Pub. Utilities Comm'n*, 109 F. Supp. 2d 1186 (N.D. Cal. 2000), *aff'd in part, rev'd in part and remanded,* 346 F.3d 851 (9th Cir. 2003) ................................ 19

*United States v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992)................................................... 39

*United States v. Woods*, 2018 WL 533914 (W.D. Ark. Jan. 24, 2018) ........................................ 10

**State Court Decisions**

*Vill. of Mundelein v. Wisconsin Cent. Ry.*, 227 Ill. 2d 281, 882 N.E.2d 544 (2008) .................... 19

S<span>TATUTES</span>

23 U.S.C. § 409 .................................................................................................................. 22

49 U.S.C. § 20901 .............................................................................................................. 22

49 U.S.C. § 20903 .................................................................................................. 20, 22, 23

R<span>ULES</span>

E.D. A<span>RK.</span> L<span>OCAL</span> R. 7.2 ................................................................................................ 6, 7, 8, 14

F<span>ED.</span> R. C<span>IV.</span> P. 1 ..................................................................................................................... 4

F<span>ED.</span> R. C<span>IV.</span> P. 26 ........................................................................................................ 4, 5, 6, 37

F<span>ED.</span> R. C<span>IV.</span> P. 30 ............................................................................................................... 36

F<span>ED.</span> R. C<span>IV.</span> P. 37 .............................................................................................................. 6, 7

R<span>EGULATIONS</span>

49 C.F.R. § 225.1 .............................................................................................................. 22

49 C.F.R. Part 225 ............................................................................................................ 22

O<span>THER</span> A<span>UTHORITIES</span>

*Company Overview*, UP.C<span>OM</span>, *available at*
    https://www.up.com/aboutup/corporate_info/uprrover/index.htm (last accessed Oct. 6, 2019)
    ................................................................................................................................... 1

# I.   INTRODUCTION

Union Pacific has already produced over **4,600 pages** of documents in the course of responding to Plaintiff Kenya Thompson's sprawling discovery requests in this garden-variety, single-plaintiff action pursued by a former railroad employee who alleged that she was terminated for reporting a back injury. Despite Union Pacific's diligent efforts to cooperate with Plaintiff and her counsel to define the proper scope of discovery and to review and produce responsive answers, documents, and witnesses, Plaintiff rigidly refused to consider modest compromises and instead chose to proceed with her Motion to Compel without the benefit of a meaningful good-faith conference regarding the twenty-five[1] separate disputes that she now asks the Court to resolve. As addressed throughout this Brief, Plaintiff's Motion mischaracterizes Union Pacific's document production and treats her own speculation as undisputed fact—all in an attempt to overstate the importance of the additional discovery she seeks. Fundamentally, given the narrow set of facts and issues presented in Plaintiff's Complaint, her discovery requests grossly overshoot the domain of relevant evidence and disproportionately exceed the needs of this case. Accordingly, Plaintiff's Motion should be denied in full.

# II.   FACTUAL BACKGROUND

## A.   Background Regarding Plaintiff's Complaint and the Narrow Scope of Issues for Which Discovery is Required.

Plaintiff, who worked for Union Pacific[2] as a conductor from July 1, 2013 until she was placed out of service on July 6, 2017 in connection with a serious safety violation, *Dkt. 1*, at ¶¶ 23, 27, filed

---

[1] Plaintiff's Motion specifically seeks to compel additional discovery as to Interrogatory Nos. 11, 12, 15, 20, and 21; Request for Production Nos. 16, 19, 21, 28, 30, 37, 43, 44, 45, 46, and 47; and Rule 30(b)(6) Topic Nos. 2, 4, 5, 13, 14, 22, 27, 28, 31, and 32. *See Dkt. 21*, at P. 3–4.

[2] Union Pacific operates 32,200 route miles across 23 States west of the Mississippi River and employs over 42,000 employees across the United States. *Overview*, UP.COM, at https://www.up.com/aboutup/corporate_info/uprrover/index.htm (last accessed Oct. 6, 2019)

her three-count Complaint on December 6, 2018. *Dkt. 1.* In Count I, which arises under the Federal

Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (FELA), Plaintiff alleged that she sustained a back

injury when she attempted to release a handbrake on a railcar on June 20, 2017 while working in

Memphis, Tennessee. *Id.* at ¶¶ 6–7. Count II of Plaintiff's Complaint, which arises under the Safety

Appliance Act, 49 U.S.C. § 20301 *et seq.* (SAA), involves the same facts that form the basis of

Plaintiff's FELA claim but asserts a negligence *per se* theory due to the alleged condition of the

handbrake that forms the basis of these claims. *Dkt. 1,* at ¶ 14. Importantly, while Plaintiff claims to

have sustained damages in excess of $75,000 under Counts I and II, "Plaintiff returned to work

immediately after her alleged personal injury on June 20, 2017[.]" *Dkt. 21-2,* at P. 1 (Response to

Request No. 29).

Finally, in Count III of the Complaint, Plaintiff accused Union Pacific of violating the Federal

Rail Safety Act, 49 U.S.C. § 20109 (FRSA). For background purposes, Plaintiff—in her capacity as

a conductor—was responsible for various safety-related obligations imposed on Union Pacific by the

Federal Railroad Administration (FRA), including the requirement to conduct proper Class 1 Air

Brake Tests. *Id.* at ¶ 33. In fact, as Plaintiff alleged in her Complaint, the FRA "requires railroad

employees to complete [Air Brake Test] form[s]" certifying the performance of those Tests. *Id.*

"[E]mployees face significant consequences if they do not complete the[se] form[s] truthfully." *Id.*

On July 5, 2017, Plaintiff was assigned as a conductor on INLMN-05, going on duty in North

Little Rock, Arkansas and travelling with light engines to make a pick-up of additional cars in Bald

Knob, Arkansas. *See Dkt. 1,* at ¶ 28; *see also Dkt. 21-2,* at P. 6 (Response to Interrogatory No. 10).

At that time, Plaintiff was obligated—under Union Pacific's policies and the FRA's regulations—to

perform a required Class 1 Air Brake Test. *Dkt. 21-1,* at P. 6. While Plaintiff signed the Form and

certified that she completed the required Test at 6:00 p.m., *Dkt. 1,* at ¶ 34, Union Pacific's Event

Recorder data and related objective evidence (*e.g.*, videos) for the railcar at issue demonstrated that Plaintiff—who by her own admission departed from Bald Knob, Arkansas at 6:03 p.m.—failed to conduct the Air Brake Test. *Id.* at ¶¶ 34, 36. Thereafter, on July 6, 2017, Union Pacific removed Plaintiff from service and charged her with a Class 5 violation for her serious safety violation. *Id.* at ¶ 27.

On July 20, 2017, Plaintiff was afforded an opportunity to respond to this charge at an investigation hearing. *Id.* at ¶ 31. At that hearing, Union Pacific presented objective documentary evidence that it was impossible for Plaintiff to complete the Air Brake Test in the two-minutes and thirty-nine seconds during which Plaintiff claimed to have performed this Test before her departure from Bald Knob, Arkansas. *See id.* at ¶¶ 32, 36. Accordingly, and based on her prior disciplinary history and pursuant to its MAPS Policy, Union Pacific terminated Plaintiff's employment following its investigation. *Id.* at ¶ 39.

On these facts, Plaintiff asserts that Union Pacific violated the FRSA by terminating her employment, and that the true reason for her termination was Union Pacific's alleged discriminatory animus against her for reporting her alleged injury. Union Pacific denies Plaintiff's allegations and submits that Plaintiff's Complaint presents a garden-variety action for which voluminous discovery is unwarranted.

**B.      Overview of Plaintiff's Written Discovery Requests and Her Half-Hearted Attempt to Confer in Good Faith**

At the outset of this litigation, the Parties agreed to a limited and narrowly-tailored scope of discovery for the following categories of information:

> Discovery will likely be needed on the facts of the FELA incident and the July 5, 2017 incident which is the subject of the FRSA claim; Plaintiff's damages; condition of Plaintiff's work place; disciplinary history of Plaintiff; condition of equipment involved in the FELA incident; Plaintiff's medical condition before and after the alleged incidents; Plaintiff's training;

cause of the FELA incident; circumstances surrounding Plaintiff being pulled from service; circumstances surrounding Plaintiff's termination. The parties anticipate depositions of fact witnesses, experts, and medical providers. Additional relevant matters may be discoverable as discovery continues.

*Dkt. 8*, at P. 2 (Joint Rule 26(f) Report). Notwithstanding the Parties' joint belief as to the narrow scope of issues necessary for discovery, Plaintiff, on April 4, 2019, served her First Set of Discovery Requests—22 Interrogatories and 47 Requests for Production of Documents—to which Union Pacific timely responded on May 3, 2019. *Dkt. 21-4*. Although several of those requests did not seek relevant information proportional to the needs of this case, and were otherwise objectionable for various independent reasons, Union Pacific responded in good faith and initially produced over 3,850 pages of documents. *See Dkt. 21-1 & 21-2*. Five days later—before Plaintiff could have reasonably evaluated and reviewed the full extent of Union Pacific's production—her counsel dispatched a purported "good faith" letter demanding that Union Pacific withdraw its objections to Interrogatory Nos. 3, 11, 12, 15, 20, and 21, and to Request for Production Nos. 2, 11, 13, 16, 18, 19, 20, 21, 26, 28, 29, 30, 31, 34, 35, 37, 38, 43, 44, 45, 46, and 47 to avoid the Court's intervention. *Dkt. 21-3* (Letter Dated May 8, 2019).

Thereafter, Union Pacific supplemented its discovery responses on **<u>five</u>** different occasions: (a) May 17, 2019 (25 pages); (b) June 28, 2019 (6 pages); (c) July 15, 2019 (748 pages); (d) August 23, 2019 (Supplemental Responses to Plaintiff's Discovery Requests); and (e) September 24, 2019 (5 pages). *See generally Dkt. 21-4*.

## C.  **<u>Plaintiff's Overbroad and Burdensome Rule 30(b)(6) Deposition Notice Contains Thirty-Two Separate Topics that Would be Impossible for Any Witness or Group of Witnesses to Reasonably Address.</u>**

On June 19, 2019, Plaintiff served Union Pacific with her Rule 30(b)(6) Notice of Deposition, which—without ever conferring with Union Pacific's counsel with respect to scheduling—purported

to require Union Pacific to produce corporate witnesses to testify on July 25, 2019 regarding thirty-two broad and independent topics. *Dkt. 21-5*, at P. 1. In its July 19 Response, Union Pacific lodged its objections to Plaintiff's Notice in an attempt to narrow the scope of these discovery requests to reflect the needs of this lawsuit. *Id.* At the same time, however, Union Pacific—assuming the Parties' counsel could find mutually-convenient deposition dates—offered to produce deponents for the non-objectionable categories of information sought in Topic Nos. 1–5, 7–12, and 26–27.

On September 11, 2019, after the noticed deposition date passed, the Parties' counsel held a telephone conference to attempt to resolve Plaintiff's disputes with Union Pacific's objections. Six days later, Plaintiff's counsel followed-up with Union Pacific's counsel and outlined the Parties' respective positions as to each of the thirty-two Noticed topics. *Dkt. 21-6*. On September 18, 2019, Union Pacific's counsel advised of some discrepancies in Plaintiff's counsel's initial correspondence, and then on September 19, 2019, Plaintiff's counsel identified his intent to seek the Court's intervention.

Despite Union Pacific's demonstrable and time-intensive efforts to meet its discovery obligations in good faith, Plaintiff—without ever identifying the specific objections to Union Pacific's Responses for which she now takes exception, and without explaining her opposition to Union Pacific's proposed compromises—filed her Motion to Compel on September 19, 2019, shortly after her counsel's last correspondence with Union Pacific's former counsel. For the reasons that follow, Union Pacific respectfully requests that Plaintiff's Motion be denied in full.

### III.   ARGUMENT

Plaintiff's Motion—in seeking wholly disproportionate discovery relative to the importance of the issues at stake and the amount in controversy—represents a fundamental misunderstanding of the contemporary, post-2015 Amendments to the Federal Rules of Civil

Procedure. Indeed, the Rule changes of December 2015 clarified the parties' respective responsibilities during the discovery phase of litigation. Initially, Rule 1 was amended to reinforce the requirement that the parties must, along with the Court, work to assure the just, orderly, inexpensive, and expeditious progression of cases. FED. R. CIV. P. 1.

Following this important policy, Rule 26(b)(1)—as amended December 1, 2015—restores a proportionality analysis on the scope of discovery, to wit:

> **Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is [1] relevant to any party's claim or defense and [2] proportional to the needs of the case, considering [a] the importance of the issues at stake in the action, [b] the amount in controversy, [c] the parties' relative access to relevant information, [d] the parties' resources, [e] the importance of the discovery in resolving the issues, and [f] whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Federal courts across the country have recognized that "[t]he intent of the [2015 Amendments] is to bring about '[a] **change in the legal culture** that embraces the leave no stone unturned and scorched earth approach to discovery.'" *Medicinova Inc. v. Genzyme Corp.*, 2017 WL 2829691, at *5–6 (S.D. Cal. June 29, 2017) (internal citation omitted) (emphasis added).

To bring about this change in culture, Rule 26(b)(1) establishes two threshold requirements in order to obtain discovery. The first requirement is for the discovery request to seek relevant information. FED. R. CIV. P. 26(b)(1). "Relevancy for the purposes of discovery, includes 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *CFGenome, LLC v. Streck, Inc.*, 2019 WL 3969178, at *1 (D. Neb. Aug. 22, 2019) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Importantly, however, "[w]hen the relevancy of the discovery request is not readily apparent, the Court need not consider proportionality unless the moving party first shows how the requested

245334                                    6

information is relevant." *Id.* As the Eighth Circuit has stated, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (affirming denial of motion to compel). Accordingly, a party seeking to compel discovery must demonstrate that its discovery requests are not overly broad but seek information relevant to the claims or defenses in the case. *See* FED. R. CIV. P. 26(b)(1); *see, e.g.*, *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011) (affirming denial of motion to compel where defendant's "request was excessively broad, and [defendant] never attempted to narrow the scope of its request"). When the requesting party fails to make the required showing, its motion to compel should be denied. *See, e.g., Davis v. Union Pac. Ry. Co.*, 2008 WL 3992761, at *2–3 (E.D. Ark. Aug. 26, 2008) (denying, in part, motion to compel production of information relating to incidents at defendant's facilities other than the rail yard where plaintiff was injured because plaintiff failed to demonstrate the relevance of the requested information); *Carlton v. Union Pac. Ry. Co.*, 2006 WL 2220977, at *5 (D. Neb. Aug. 1, 2006) (denying motion to compel where the requesting party failed to "provide an adequate connection between the information sought and any issue in the case").

For other requests that may arguably satisfy Rule 26's relevancy requirement, Plaintiff must next establish that her requests are "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Proportionality requires a case-by-case assessment of six factors that serve to narrow and reduce overused discovery devices. *See, e.g., Smith v. Bradley Pizza, Inc.*, 2019 WL 2448575, at *9 (D. Minn. June 12, 2019). As the Advisory Committee observed, the proportionality requirement under Rule 26 "reinforces" the obligation of all parties—both those making requests and those responding to them—to consider these factors in the discovery process. FED. R. CIV. P.

26, *Advisory Notes—2015 Amendments.* In the absence of meeting this second threshold showing, "[a] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Pentel v. Shepard*, 2019 WL 3729770, at \*4 (D. Minn. Aug. 8, 2019) (citations omitted). Finally, prior to seeking the Court's intervention, Rule 37(a)(1) and Local Rule 7.2(g) require that a party seeking to compel discovery confer in good faith prior to filing a Motion to Compel. FED. R. CIV. P. 37(a)(1); E.D. ARK. LOCAL R. 7.2(g).

Here, and as explained below, Plaintiff failed to satisfy each of these threshold requirements. Accordingly, Plaintiff's Motion should be denied because: (A) with respect to her First Set of Discovery Requests, Plaintiff failed to meaningfully engage in her obligations to confer in good faith as required by Rule 37(a)(1) and Local Rule 7.2(g); (B) even if her May 8, 2019 letter satisfied her good faith conference obligations, additional discovery is unwarranted, and Plaintiff provided no substantive argument to address or respond to Union Pacific's objections to each of the disputed Requests; and (C) Plaintiff's disputed Rule 30(b)(6) Deposition Topics are facially excessive, and her failure to confront Union Pacific's narrow objections and proposed compromises should preclude her from obtaining any relief requested in her Motion.

A.    **Plaintiff's Motion to Compel Additional Responses to her First Set of Discovery Requests Should Be Denied Because Plaintiff Failed to Satisfy Local Rule 7.2(g)'s Requirement to Confer in Good Faith on *Specific* Discovery Disputes Prior to Seeking the Court's Intervention.**

Initially, Plaintiff's Motion—at least with respect to the disputed[3] Interrogatory and Request for Production responses—must be denied because Plaintiff failed to make the requisite good-faith attempt to resolve her discovery-related concerns prior to filing her Motion as required

---

[3] Plaintiff's Motion specifically seeks to compel responses without objection to Interrogatory Nos. 11, 12, 15, 20, and 21 and Requests for Production Nos. 16, 19, 21, 28, 30, 37, 43, 44, 45, 46, and 47. *Dkt. 21.*

by Rule 37(a)(1) and Local Rule 7.2(g). *See Williamson v. Missouri Dep't of Corr.*, 740 F. App'x 513, 514 (8th Cir. 2018) (citing FED. R. CIV. P. 37(a)(1)); *see also* E.D. ARK. LOCAL R. 7.2(g). To be clear, there is no dispute that Plaintiff's counsel sent a letter to Union Pacific's counsel on May 8, 2019—over four months before Plaintiff filed her Motion—which purported to represent "Plaintiff's good faith attempt to resolve these discovery issues without court action[.]" *Dkt. 21-3.* This letter, however, failed to satisfy the particularity requirements outlined in Local Rule 7.2(g), which provides that:

> [a]ll motions to compel discovery and all other discovery-enforcement motions and all motions for protective orders **shall** contain a statement by the moving party that the parties have **conferred in good faith on the specific issue or issues in dispute** and that they are not able to resolve their disagreements without the intervention of the Court. If any such motion lacks such a statement, that motion may be dismissed summarily for failure to comply with this rule. Repeated failures to comply will be considered an adequate basis for the imposition of sanctions

E.D. ARK. LOCAL R. 7.2(g) (emphasis added).

Instead, Plaintiff—without any explanation or identification of a *specific issue* in dispute— merely offered the following perfunctory statement:

> Some of Union Pacific's answers and responses contain improper objections and incomplete information. Please accept this letter as Plaintiff's good faith attempt to resolve these discovery issues without action:
>
> Union Pacific objected to Interrogatory Nos. 3, 11, 12, 15, 20, and 21. Please withdraw objections and provide complete answers. Union Pacific also objected to Request Nos. 2, 11, 13, 16, 18, 19, 20, 21, 26, 28, 29, 30, 31, 34, 35, 37, 38, 43, 44, 45, 46, and 47. Please withdraw objections and provide complete responses and responsive material. As to Request No. 27, please confirm that all responsive material to this Request has been produced.

*Dkt. 21-3.* As identified, Plaintiff's May 8 letter did not identify any particular issues with Union Pacific's objections; rather, Plaintiff's letter demanded a wholesale withdrawal of all objections

245334                                          9

without an explanation as to why she believed that Union Pacific's objections were improper. "Simply demanding compliance with a discovery request does not amount to a good faith effort to resolve a discovery dispute." *Hawk Tech. Sys., LLC v. Oaklawn Jockey Club, Inc.*, 2015 WL 13813612, at *1 (W.D. Ark. Nov. 5, 2015). "Under ordinary circumstances, this is not the sort of dialogue that th[e] Court would consider sufficient to satisfy Local Rule 7.2(g)'s requirement of having 'conferred in good faith' prior to filing a motion to compel." *United States v. Woods*, 2018 WL 533914, at *1 (W.D. Ark. Jan. 24, 2018). As Judge Holmes observed, "[t]o confer means: [t]o consult together; to compare opinions; [and] to carry on a discussion or deliberation[.]" *Engleman v. United States*, 2015 WL 12696094, at *1 (E.D. Ark. Sept. 24, 2015) (citations omitted) (stating that "writing a demand letter and stating a deadline does not constitute conferring in good faith").

Here, Plaintiff—on one single occasion, and four months before she filed her Motion— failed to satisfy Local Rule 7.2(g)'s requirements with her May 8 letter. The requirement to engage in thoughtful, specific discourse regarding disputed discovery issues "exists to ensure that the Court's valuable time and resources are not squandered on the minutia of discovery disputes that can, and should if at all possible, be resolved by the parties themselves." *Isham v. Booneville Community Hospital*, 2014 WL 11514532, at *1 (W.D. Ark. Dec. 1, 2014). "[A] single request letter, . . . and the lack of follow-up communications by the sender are insufficient to show that the parties have conferred or attempted to confer in good faith to resolve their dispute[.]" *Id.*

Because Plaintiff has produced no other record evidence to demonstrate that she sought to confer regarding the disputed Requests at any point after May 8, 2019—particularly in light of the volume of information produced and Union Pacific's repeated supplementation—her Motion to Compel responses to Interrogatory Nos. 11, 12, 15, 20, and 21 and Request for Production Nos. 16, 19, 21, 28, 30, 37, 43, 44, 45, 46, and 47 should be denied.

**B.**     **Even if Plaintiff's May 8, 2019 Letter Satisfied her Good Faith Conferral Obligations, the Court Should Nevertheless Deny Plaintiff's Motion to Compel Additional Written Discovery Responses Because Plaintiff Provided No Substantive Argument to Address Union Pacific's Specific Objections to Each Disputed Request.**

If the Court is inclined to consider the substance of Plaintiff's Motion despite her failure to meaningfully engage in good-faith dialogue regarding the disputed Requests, the Court should nevertheless deny the Motion because Plaintiff failed to confront the majority of Union Pacific's objections, supplementation, and compromise proposals. Rather, Plaintiff—without ever identifying the basis for which she takes exception with Union Pacific's various objections to multiple discovery requests—states in broad and categorical terms that Union Pacific's objections are improper. In addition to the general and vague nature of Plaintiff's Motion, Union Pacific notes that the manner in which Plaintiff chose to organize her arguments makes the Court's analysis exceedingly difficult because she failed to address each disputed Request in sequential order. To avoid further complicating the Court's analysis, Union Pacific addresses the substance of each disputed Request in the order in which Plaintiff chose to proceed, and argues under the following subheadings that Plaintiff's Motion should be denied as to each of the following Requests: (1) Interrogatory Nos. 11 and 12 and Request Nos. 21 and 28; (2) Request Nos. 16 and 19; (3) Request No. 37; (4) Interrogatory No. 15; (5) Request No. 30; and (6) Interrogatory Nos. 20 and 21 and Request Nos. 43, 44, 45, 46, and 47. Finally, in Section III(B)(7), Union Pacific addresses the imminent production of its privilege log.[4]

---

[4] Because a separate and distinct analysis applies with respect to Plaintiff's Rule 30(b)(6) Notice of Deposition, Union Pacific addresses these arguments in Section III(C), *infra*.

1.    **Union Pacific's Objections to Interrogatory Nos. 11 and 12 and Request Nos. 21 and 28 Should be Sustained Because the Information Requested is Neither Relevant nor Proportional to the Needs of this Litigation Under Rule 26(b)(1).**

Plaintiff initially complains, in conclusory terms without exposition and analysis, that Union Pacific's objections to Interrogatory Nos. 11 and 12 and Request for Production Nos. 21 and 28 are improper and "must be overruled." *Dkt. 21*, at P. 5. Plaintiff, however, paints with too broad a brush, and she fails to address and respond to each of Union Pacific's objections. In this respect, Plaintiff's Motion is improper because "the party filing the motion to compel has the initial burden of addressing each . . . objection in [her] motion to compel[,] . . . [which] brings the objection 'into play' and places the burden on the objecting party to support its objections." *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 671, n.37 (D. Kan. 2004). Where the movant "fails to address an objection in its motion to compel, the objecting party need not raise it, and the objection will stand." *Id.*

Here, even if the Court were to consider Plaintiff's Motion despite its underdeveloped analysis, her arguments—when exposed to even the slightest degree of scrutiny—are exposed as general legal platitudes adorned only with logical fallacies—*e.g.*, that records that are easy to produce are, therefore, discoverable (*Dkt. 21*, at P. 6, n.5 (stating that Union Pacific is withholding one day's worth of data)) and that FELA's standard of negligence implies discovery outside of the controlling rules (*id.* at P. 5). As demonstrated by Union Pacific's responses, there is no basis upon which to compel additional discovery as to these disputed Requests:

> **INTERROGATORY NO. 11:** During the three years immediately before the June 20, 2017, incident, did Defendant receive any reports, complaints, notices, or anything of the like concerning Defendant's handbrakes such as the hand brake involved in Plaintiff's reported injury?
>
> **ANSWER:** Defendant objects to this request to the extent it seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects as over broad and

unduly burdensome. Without waiving said objections, attached are the maintenance records for the car and handbrake involved in the June 20, 2017 incident for one year before the accident until one year after the incident.

**SUPPLEMENTAL ANSWER:** Subject to and without waiving the above objections, please see documents previously produced as UPRR THOMPSON 003860-003861; UPRR THOMPSON 003882-003885; UPRR THOMPSON 003887-003891. Union Pacific contends that any information beyond that provided in the above-referenced documents is overly broad and unduly burdensome, and is irrelevant because it is not limited to the specific tank car in question.

**INTERROGATORY NO. 12:** List the names of any person that informed Defendant, including, but not limited to, foremen, supervisors, and/or management, of any problems, defects, concerns, or operational/safety issues pertaining to the subject handbrake for the period of five years before the June 20, 2017, incident through the present, including who those individuals informed and when Defendant received that information.

**ANSWER:** Defendant objects to the extent this interrogatory seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects as overbroad and unduly burdensome. Without waiving said objection, see attached car history maintenance and inspection report from June 20, 2016 to June 20, 2018.

**SUPPLEMENTAL ANSWER:** To the best of its knowledge formed after a reasonable inquiry, Union Pacific is not withholding responsive information.

**REQUEST FOR PRODUCTION NO. 21:** All reports, documents, notes or other materials which contain information from any of Defendant's employees advising Defendant, its foremen, or supervisors, of safety concerns or injuries related to the use of wheel style handbrakes for the period of five years prior to the subject incident through the present.

**RESPONSE:** Union Pacific objects to this Request as it is overly broad, unduly burdensome and not limited to the specific tank car in question. Without waiving said objection, Union Pacific will conduct a reasonable investigation to determine whether it has responsive documents with respect to wheel styled hand brakes on rail cars.

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving the above objections, please see documents previously produced as UPRR THOMPSON 003860-003861; UPRR THOMPSON 003882-003885;

UPRR THOMPSON 003887-003891. Union Pacific contends that any information beyond that provided in the above-referenced documents is overly broad and unduly burdensome, and is irrelevant because it is not limited to the specific tank car in question.

**REQUEST FOR PRODUCTION NO. 28:** A list of claims of injury reported by Defendant's employees while operating handbrakes, identifying the date of reported injury, the circumstances of the incident, the type of injury, the type of handbrake, and the identity of the injured party, for the period of five years before the subject incident through the present; including the injured party's written report of injury.

**RESPONSE:** Defendant objects to the extent this request is overly broad, unduly burdensome, seeks information which is personal and confidential to individuals who are not a party to this lawsuit, and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information that is disproportionate to the needs of the case considering the factors in Fed. R. Civ. P. 26(a)(l). Without waiving said objections, Union Pacific will agree to search for and provide a redacted list of claimed back injuries allegedly associated with hand brakes for Plaintiff's craft on the NLR Service Unit for a reasonably time period, if Plaintiff will agree revise this request as so stated.

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving the above objections, please see document previously produced as UPRR THOMPSON 003860-003861, which is a list of reported claims for back injuries for yardmen, brakemen, and conductors associated with a handbrake from 07/20/12 through 03/19 in the North Little Rock and Mid-America Service Units. Union Pacific is otherwise standing on its objections.

*Dkt. 21-4*, at P. 6–7, 25–26, 27–28.

Initially, Union Pacific objected to Interrogatory No. 11 because the question of whether complaints regarding handbrakes in general, across *all* of Union Pacific's operations across the United States for the last three years, are not relevant to whether the *specific* handbrake that forms the basis of Plaintiff's Complaint was unsafe. While Plaintiff argues that complaints about unrelated handbrakes are relevant for purposes of establishing foreseeability and negligence, "[m]ere speculation that information might be useful will not suffice; litigants seeking to compel

discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Carlton*, 2006 WL 2220977, at *3.

Here, Plaintiff's Complaint contains no assertion that wheel-style handbrakes are inherently dangerous; rather, she alleged that the specific handbrake on the railcar that she operated on June 20, 2017 "failed to operate effectively and efficiently in its intended fashion, causing Plaintiff to sustain injuries to her back." *Dkt. 1*, at ¶¶ 7, 14. Logically, complaints from other employees about other handbrakes on other railcars from other parts of the country, with individualized and distinct maintenance histories, are not relevant to Plaintiff's claim that she suffered a back injury when she operated a specific handbrake on one railcar in June 20, 2017. For these same reasons, the information sought in Interrogatory No. 12 and Request Nos. 21 and 28— which inexplicably seek the identity of and records for various complainants for *five* years (as opposed to the three-year period set forth in Interrogatory No. 11) preceding Plaintiff's alleged injury—also fails to meet Rule 26's relevancy requirement.

To the extent that the Court finds that Plaintiff's broad and sweeping requests are relevant, Union Pacific also objected to Interrogatory Nos. 11 and 12 and Requests No. 21 and 28 because, in the absence of appropriate temporal, geographic, and trade-related restrictions, Plaintiff's requests are overbroad and unduly burdensome. In this respect, these disputed discovery requests are not proportionate to the needs of this case. Again, Plaintiff failed to address these objections in her Brief, and she failed to identify why one year of pre- and post-incident maintenance and inspection records, along with a listing of other complaints that Union Pacific received during that time period, did not sufficiently address her concerns. In the same ken, Plaintiff failed to discuss or address Union Pacific's proposed compromise regarding Request Nos. 21 and 28 (*e.g.*, production of a list of reported claims for back injuries for yardmen, brakemen, and conductors

associated with a handbrake from 07/20/12 through 03/19 in the North Little Rock and Mid-America Service Units).

Because these requests, on their face, are excessive and disproportionally exceed the specific requirements of this litigation, Plaintiff was obligated to articulate a reasonable basis upon which to compel further discovery. Plaintiff failed to confront the majority of Union Pacific's objections to Interrogatory Nos. 11 and 12 and Request Nos. 21 and 28, as well its proposed compromise to resolve these disputed items. Consequently, Plaintiff's Motion must be denied.

### 2. Plaintiff's Attempt to Compel Additional Discovery in Connection with Request Nos. 16 and 19 is Frivolous and Must be Denied.

Plaintiff appears to also seek additional discovery in connection with Request for Production Nos. 16 and 19. Her basis for moving to compel additional discovery as to these items is difficult to discern, and the only reference to Request No. 16 in the Argument section is buried in Footnote 4 on Page 5 of her Brief. Plaintiff otherwise supplied no argument in support of her contention that additional discovery should be compelled in response to Request No. 19. Because Plaintiff did not see merit in thoughtfully discussing Request Nos. 16 and 19 in bringing her Motion, the Court she refuse to consider her Motion as to these requests pursuant to Local Rule 7.2(a), which requires all substantive motions to be accompanied by a "brief consisting of a concise statement of relevant facts and applicable law." E.D. ARK. LOCAL R. 7.2(a).

Even if the Court finds that Plaintiff's limited analysis in Footnote 4 meets Local Rule 7.2(a)'s particularity requirements, her Motion should nevertheless be denied as to Request Nos. 16 and 19. First, Plaintiff misrepresents the scope of Request No. 16 as a request "for records . . . concerning maintenance, inspection, and repair records for the subject railcar for **three years** prior to the subject incident through the present." *Dkt. 21*, at P. 5, n. 4 (emphasis added). Request No. 16, as demonstrated below, contains *no* temporal restriction:

**REQUEST FOR PRODUCTION NO. 16:** All reports reflecting inspection, maintenance and repair of the subject railcar, including but not limited to the handbrakes.

> **RESPONSE:** Union Pacific objects of extent of this request is overbroad and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Further, this request is objectionable because it seeks information that is disproportionate to the needs of the case considering the factors in Fed. R. Civ. P. 26(a)(l). Without waiving said objection see inspection report previously produced as UPRR Thompson 000261-266, and attached car history report for June 20, 2016 through June 20, 2018.

> **SUPPLEMENTAL RESPONSE:** Union Pacific is performing a reasonable search for responsive information.

*Dkt. 21-4*, at P. 23. As written, Request No. 16 is excessive on its face, and any suggestion that **all** maintenance records related to the entire railcar, beyond the handbrake that forms the basis of Plaintiff's Complaint, for the entire duration of time during which the railcar has been in Union Pacific's service, are relevant and proportional to the needs of this litigation defy both logic and law. Ultimately, Plaintiff failed to address or articulate any justifiable basis upon which to overcome Union Pacific's objections to Request No. 16, and her attempt to compel additional discovery should be denied. This outcome is further compelled because Plaintiff fails to explain why the records she already received fail to satisfy the proportional needs of this litigation. Notwithstanding, as indicated, Union pacific will supplement its discovery if additional responsive documents are located.

With respect to Request No. 19, which did contain a three-year temporal restriction, Union Pacific responded as follows:

> **REQUEST FOR PRODUCTION NO. 19:** A copy of any recommendations, standards, specifications or regulations pertaining to inspecting, maintaining, repairing and/or performing preventive maintenance or repairs relating to Defendant's wheel style handbrakes, the type of which Plaintiff operated at the time of the subject incident, within three years prior to the subject incident, to the present, from the manufacturer/reseller/maintainer of said equipment or the FRA, the AAR or OSHA.

**RESPONSE:** Objection to the extent this request is overbroad, unduly burdensome, and seeks irrelevant information not reasonably calculated to lead to discovery of admissible evidence. Further, this request seeks information that is disproportionate to the needs of the case considering the factors in Fed. R. Civ. P. 26(a)(l). Without waiving said objections, see attached car history report and post-accident inspection previously produced.

**SUPPLEMENTAL RESPONSE:** Union Pacific is performing a reasonable search for responsive information. Regarding federal regulations and standards, Union Pacific is standing on its objections. Regarding AAR materials, Union Pacific will make Rule 13 from the 2017 Field Manual of the AAR Interchange Rules (which are copyrighted) available for inspection at a mutually agreeable time at the office of Friday, Eldredge & Clark, LLP, 400 W. Capitol Ave., Ste. 2000, Little Rock, Arkansas 72201.

*Dkt. 21-4*, at P. 24. Plaintiff has not identified the basis for her disagreement with Union Pacific's responses, and to undersigned counsel's knowledge, she made no effort to schedule a time to review the records that Union Pacific agreed to produce for her inspection with its former counsel. In the absence of any articulable basis to support her disagreements with Union Pacific's objections as to Request No. 19, Plaintiff's Motion should be denied.

3.      **"Hot Box" Reader Data, Which Plaintiff Seeks in Request No. 37, is Wholly Irrelevant to Any Issue in this Litigation.**

Union Pacific should not be compelled to produce data from its "hot box" reader, as demanded in Plaintiff's Request for Production No. 37, because that information has no bearing on any of Plaintiff's claims and because the production of same is otherwise disproportionate to the specific needs of this litigation. *See Dkt. 21-4*, at P. 32. In properly denying Plaintiff's Motion as to Request No. 37, the Court must simply answer one question: whether the failure to conduct an air brake test automatically results in an overheating condition in the bearings on a railcar. Because the answer to this question is "no," Plaintiff's Motion must be denied.

There is no real dispute between the Parties as to the type of data that a "hot box" reader would capture. Plaintiff states that hotbox reader data "would have detected **a problem with the braking system**" in Plaintiff's railcar from July 5, 2017. *Dkt. 21*, at P. 6 (emphasis added). Though not completely accurate, Plaintiff is correct that hot box detectors, also known as trackside defect detectors, monitor potential overheating conditions on railcars. More specifically, hot box readers are devices attached to railroad tracks that monitor whether passing trains are operating with overheated wheel bearings. *Union Pac. Ry. Co. v. California Pub. Utilities Comm'n*, 109 F. Supp. 2d 1186, 1198 (N.D. Cal. 2000), *aff'd in part, rev'd in part and remanded,* 346 F.3d 851 (9th Cir. 2003). When overheating occurs, a signal is transmitted to dispatch, wayside displays, or other relevant train crews, which could also indicate that equipment is dragging from the rear car of the train. *See, e.g., Vill. of Mundelein v. Wisconsin Cent. Ry.*, 227 Ill. 2d 281, 284, 882 N.E.2d 544, 547 (2008).

There is also no dispute that "hot box" detectors **do not** capture data regarding whether an airbrake test is performed. *See, e.g., Servo Corp. of Am. v. Gen. Elec. Co.*, 393 F.2d 551, 552 (4th Cir. 1968) (in a patent dispute regarding "hot box detectors," the court noted that these devices are used "in the railroad industry to detect an abnormal quantity of heat emanating from freight car[s]"). Instead, as Plaintiff makes clear, Union Pacific relied on Event Recorder data to substantiation its contentions. *See, e.g., Dkt. 1*, at ¶ 32. Importantly, this data has already been produced to Plaintiff in response to her other discovery requests, *Dkt. 21*, at P. 6, n.5 (stating that "Defendant has produced, among other things, a car history report, a consist list, an event recorder graph, superintendent bulletins, and a train list, but is withholding one day's worth of hot box reader data"), and it was previously produced by Union Pacific at Plaintiff's investigation hearing on July 20, 2017. *Dkt. 1*, at ¶¶ 31–32. As demonstrated by Union Pacific's production of "event

recorder" data, Plaintiff failed to perform a federally-mandated airbrake test on July 5, 2017. *See Dkt. 1*, at ¶¶ 27, 30.

In its appropriate context, Plaintiff's suggestion that hot box detector data is "central to Plaintiff's position that the purported failure to conduct an air brake test was utilized by Defendant as a pretext for terminating Plaintiff[,]" *Dkt. 21*, at P. 5, is wholly unfounded. Neither Plaintiff nor Union Pacific contend that Plaintiff's failure to perform an airbrake test resulted in an overheating condition that would have otherwise triggered a signal in a hot box detector on the railroad tracks that Plaintiff's railcar happened to pass on July 5, 2017. While Plaintiff alleged that her failure to perform an airbrake test before the trip began would have triggered a hot box signal, *Dkt. 1*, at ¶ 37, Plaintiff's argument is wholly unsupported and simply presupposes that failing to conduct an airbrake test inherently results in overheating or other unspecified problems with a railcar's braking system. This assumption is incorrect, and Union Pacific has never suggested—as Plaintiff's Complaint makes clear—that her failure to conduct an airbrake test caused an overheating condition that triggered a signal from the hot box detectors encountered by Plaintiff's railcar on July 5, 2017.

Consequently, because neither Plaintiff nor Union Pacific asserted that Plaintiff's failure to conduct an airbrake test resulted in a "problem" with her railcar's braking system, hot box detector data is wholly irrelevant to her claims. For this reason, Union Pacific's objections as to relevance should be sustained. Even if the Court believes that hot box detector data meets Rule 26's relevancy requirements, Plaintiff failed to confront Union Pacific's arguments with respect to proportionality. The burden and expense of producing data from each hot box detector that Plaintiff's railcar encountered on July 5, 2017 far outweighs the potential value of this data. Accordingly, the Court should deny Plaintiff's Motion as to Request No. 37.

**4.      Because Union Pacific's Supplemental Response to Interrogatory No. 15 Addressed Plaintiff's Only Articulated Basis for Seeking to Compel Additional Discovery, Plaintiff's Motion Should be Denied.**

Union Pacific provided the following responses to Interrogatory No. 15 before Plaintiff filed her Motion:

> **INTERROGATORY NO. 15:** Identify all reports prepared concerning the allegations alleged in Plaintiff's Complaint, except for those generated by claim or legal department personnel, and, for each report, state the nature and address of the individuals who prepared the report, the date they prepared it, who directed its preparation, and to whom they disseminated the report.
>
> **ANSWER:** Objection, vague, unduly burdensome and seeks irrelevant information, in part, because this request seeks information that is disproportionate to the needs of the case considering the factors in Fed. R. Civ. P. 26(a)(1). Without waiving said objections, see attached management manager's report, AIRS report, and Form 6180.98. These reports are prepared pursuant to standard procedures. The Manager's report would have been sent to appropriate safety and transportation department personnel.
>
> **SUPPLEMENTAL RESPONSE:** To the best of its knowledge formed after a reasonable inquiry, Union Pacific is not withholding any responsive non-privileged reports.

*Dkt. 21-4*, at P. 9–10. Prior to filing her Motion, Plaintiff never articulated any specific disagreement with Union Pacific's responses to Interrogatory No. 15, and in this respect, her failure to meaningfully engage in the good faith conference process required under Local Rule 7.2(g) frustrates the Court's analysis and Union Pacific's ability to respond to her Motion.

In any event, and as a practical matter, aspects of Interrogatory No. 15 make little sense. For instance, what information does Plaintiff seek with respect to the "nature . . . of the individuals who prepared" a report concerning the allegations in Plaintiff's Complaint? Providing an answer to this request is exceedingly difficult because Interrogatory No. 15 is vague. Moreover, even if Interrogatory No. 15, as written, was clearly articulated, what is the relevance of the "nature" of those individuals? It appears that Plaintiff also struggled with these questions because she excluded

this particular provision from her description of Interrogatory No. 15 in her Brief. *C.f. Dkt. 21*, at P. 7, *with Dkt. 21-4*, at Int. No. 15.

Inexplicably, Plaintiff alleged that Union Pacific's objections to Interrogatory No. 15 were only lodged on the basis of breadth and burden, and that—based on its objections—"it is not possible for Plaintiff to ascertain what material, if any, is being withheld subject to objection." *Dkt. 21*, at P. 7.[5] As discussed in the preceding paragraph, Plaintiff misstates the full extent of Union Pacific's objections. In addition to its objections based on vagueness, relevance, breadth, and burden, Union Pacific objected to Interrogatory No. 15 because the all-encompassing nature of that request is also disproportionate to the needs of this case. *See Clean Earth Remediation & Const. Servs., Inc. v. Am. Int'l Grp., Inc.*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007) (collecting cases) (noting that a number of courts have held that interrogatories seeking identification of all facts supporting a particular allegation are inherently improper); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186–87 (D. Kan. 1997) ("Indiscriminate use of blockbuster interrogatories . . . do not comport with the just, speedy, and inexpensive determination of the action"); *Switch Commc'ns Grp. v. Ballard*, 2011 WL 3957434, at *8 (D. Nev. Sept. 7, 2011) (citations omitted) (observing that all-encompassing interrogatories "would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details"). Plaintiff failed to address these objections, and consequently, her Motion should be denied on this basis alone.

---

[5] Plaintiff also suggests that Union Pacific raised a statutory privilege objection to Interrogatory No. 15. *See Dkt. 21*, at P. 7–8 (stating that 49 U.S.C. § 20903 is "of no aid to Defendant with respect to . . . the vast majority of information responsive to Interrogatory No. 15"). Union Pacific made no statutory privilege argument in its multiple responses to Interrogatory No. 15, and her slipshod analysis of the law and facts should be met with careful scrutiny by the Court in properly denying Plaintiff's Motion.

Plaintiff's Motion should also be denied as to Interrogatory No. 15 because Union Pacific, despite its objections, provided substantive responses to Plaintiff's request. Oddly, Plaintiff conveniently omitted any discussion of Union Pacific's substantive responses from her Brief, and she also failed to acknowledge that Union Pacific supplemented its response to Interrogatory No. 15 to state conclusively that no responsive, non-privileged reports were withheld from its production. *Dkt. 21-4.* Accordingly, because Union Pacific assuaged the only articulated basis for Plaintiff's request to compel additional responses to Interrogatory No. 15 (*e.g.*, her inability to discern whether responsive information was withheld on the basis of Union Pacific's objections), Plaintiff's Motion should be denied.

5.   **Plaintiff's Contentions that Union Pacific Must, in Response to Request for Production No. 30, Produce Information Protected by 49 U.S.C. § 20903, are Without Merit.**

In overly-broad terms, Plaintiff requested production of "[a]ll materials, including, but not limited to, documents, reports, and logs in Defendant's possession that the Federal Railroad Administration or another government agency requires Defendant to keep that pertain to the incidents described in Plaintiff's Complaint[]" in Request for Production No. 30. *Dkt. 21-4*, at P. 29. Union Pacific responded to this Request as follows:

> **RESPONSE:** Union Pacific objects to this request as irrelevant, over broad, vague, and requires UP to speculate and/or determine agency requirements and/or what documents Plaintiff is requesting. Further, this request is objectionable in that it calls for the production of information protected by 49 U.S.C. § 20903. Subject to and without waiving this objection, see FRA Railroad Employee Injury And/Or Illness Record, and Form 6180.98, produced herewith.

*Id.* Plaintiff suggests that Union Pacific's invocation of its statutory privilege under 49 U.S.C. § 20903 is improper. *Dkt. 21*, at P. 8. Plaintiff does not, however, address any of Union Pacific's other objections, including relevance and vagueness that requires it to speculate and/or determine

agency requirements as well as the specific documents sought in Plaintiff's Request. By failing to address these other objections, the Court should infer that Plaintiff tacitly agrees that Union Pacific's other objections are meritorious. Therefore, Plaintiff's Motion as to Request No. 30 should be denied.

Notwithstanding, Plaintiff's arguments with respect to 49 U.S.C. § 20903 are also misplaced. The FRA requires railroads to report certain railroad accidents or incidents and to provide specified information pertaining to those accidents or incidents to the Administration. 49 U.S.C. § 20901; 49 C.F.R. Part 225. The FRA requires this information to ensure that it has accurate information concerning the hazards and risks that exist on the nation's railroads to effectively carry out its regulatory responsibilities. 49 C.F.R. § 225.1. The FRA further uses the information "for determining comparative trends of railroad safety and to develop hazard elimination and risk reduction programs that focus on preventing railroad injuries and accidents." 49 C.F.R. § 225.1. To promote the public policy of encouraging and ensuring accurate and candid reporting of the information necessary to the FRA's analysis and review of these safety issues, accident or incident reports filed by a railroad with the FRA cannot be used in civil actions for damages arising from a matter mentioned in the report. The law specifically provides:

> No part of an accident or incident report filed by a railroad carrier under Section 20901 of this title or made by the Secretary of Transportation under Section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report.

49 U.S.C. § 20903. As the United States Supreme Court has observed under an analogous statute, Congress could reasonably believe that eliminating the use of required reports and information in litigation "would result in more diligent efforts to collect the relevant information, more candid discussions of hazardous locations, better informed decisionmaking, and, ultimately greater safety

on our nation's roads." *Pierce County, Washington v. Guillen*, 537 U.S. 129, 147 (2003) (interpreting 23 U.S.C. § 409).

Here, because the FRA requires a railroad to gather the information regarding an employee accident on FRA Form 6810.98 or its railroad equivalent and to provide the FRA with a monthly report of that information on FRA Form 6180.55a, some of the information that Plaintiff may seek in her broad Request No. 30 is not discoverable as a matter of law. Ultimately, there appears to be no disagreement between the Parties as to 49 U.S.C. § 20903's application to monthly reports like those submitted on a monthly basis to the FRA on Form 6180.55a. Again, Union Pacific produced Form 6180.98 in the course of discovery, and—despite its production—Plaintiff has failed to articulate a basis upon which to compel additional voluminous discovery.

Litigants seeking to compel discovery must describe "with a reasonable degree of specificity" the information they hope to obtain and its importance to their case. *Heim*, 2014 WL 6949044, at *6 (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)). Under this standard, a party is not granted unfettered access to all of an adversary's business records. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). When objecting to discovery requests, a party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support to raise and stand on its objections. *Heim*, 2014 WL 6949044, at *8. Here, because Plaintiff failed to specify with reasonable particularity what documents she seeks, and because Union Pacific produced Form 6180.98, Plaintiff's Motion as to Request No. 30 should be denied.

**6.      Interrogatory Nos. 20 and 21 and Request Nos. 43, 44, 45, 46, and 47 are Facially Overbroad and Excessive, and Plaintiff Failed to Meet her Threshold Requirement of Establishing Relevance and Proportionality in Order to Overcome Union Pacific's Objections to These Burdensome Requests.**

Plaintiff argues, without addressing *any* of Union Pacific's objections or its proposed accommodation to produce a list of conductors (without full names) who were disciplined for failing to perform a Class 1 Air Brake Test in response to Interrogatory Nos. 20 and 21 and Request for Production Nos. 43, 44, 45, 46, and 47, that Union Pacific's "refusal to produce discovery regarding the discipline of Plaintiff's coworkers is unfounded and contrary to law." *Dkt. 21*, at P. 9–10. Respectfully, Plaintiff is mistaken.

Union Pacific responded to Interrogatory Nos. 20 and 21 as follows:

> **INTERROGATORY NO. 20:** For the five years preceding the incident to present, identify by name, address, and subdivision each of Defendant's conductors who have been terminated for allegedly failing to perform a Class 1 Air Brake Test and indicate which of those conductors reported an on-duty injury in the year preceding their termination.

> **INTERROGATORY NO. 21:** For the five years preceding the incident to present, identify by name, address, and subdivision each of Defendant's conductors who have been charged with allegedly failing to perform a Class 1 Air Break Test and indicate what discipline, if any, was assessed including but not limited to termination, suspension, and/or probation.

> **ANSWER:** Union Pacific objects to this interrogatory because it seeks irrelevant information which is a not likely to lead to the discovery of admissible evidence. Further, it is overly broad and unduly burdensome and Union Pacific does not maintain records in a manner that would allow it to provide the information requested that without undue burden. This request seeks information that is disproportionate to the needs of the case considering the factors in Fed. R. Civ. P. 26 (a)(l). Further, this interrogatory is objectionable because it seeks personal and confidential information concerning individuals not parties to this lawsuit. Plaintiff was not permanently terminated because she failed to conduct an air brake test, but was permanently terminated based on her disciplinary history and Union Pacific's Maps Policy.

> **SUPPLEMENTAL ANSWER:** Subject to and without waiving its objections, Union Pacific is working on a list of conductors (without full

names) disciplined for failing to perform a Class 1 Air Brake Test during the five years preceding Plaintiff's incident.

*Dkt. 21-1, 21-4.* As set forth above, Union Pacific objected to Interrogatory Nos. 20 and 21 on the following bases: (1) relevance; (2) overbreadth and undue burden because Union Pacific does not maintain records in a manner that would allow it to produce responsive information without undue burden; (3) lack of proportionality; and (4) because it seeks personal and confidential information about individuals who are not parties to this litigation. In addition, Union Pacific also objected to Request for Production Nos. 43, 44, 45, 46, and 47 to the extent that each Request (5) sought information protected by work-product or attorney-client privilege, and because they (6) failed to seek documents with reasonable particularity. Specifically, Union Pacific provided the following, nearly[6] identical responses to Request Nos. 43, 44, 45, 46, and 47:

> **REQUEST FOR PRODUCTION NO. 43:** All materials related to, documenting, or discussing discipline of conductors for failure to perform a Class 1 Air Brake Test for the five years preceding Plaintiff's termination.
>
> **REQUEST FOR PRODUCTION NO. 44:** A list of Defendant's conductors charged with failing to perform a Class 1 Air Brake Test, identifying the date of the purported rule violation, the circumstances of the violation, the discipline assessed, whether the conductor had reported an on-duty injury prior to the charge, and the identity of the party, for the period of five years before the subject incident through the present.
>
> **REQUEST FOR PRODUCTION NO. 45:** All records, reports, transcripts, or documents related to Defendant's charge, investigation and discipline of conductors charged with failing to perform a Class 1 Air Brake Test for the five years preceding the subject incident through the present.
>
> **REQUEST FOR PRODUCTION NO. 46:** All records, reports, transcripts, or documents related to Defendant's charge, investigation and

---

[6] Request No. 46 seeks records related to Union Pacific's engineers. Because Plaintiff has never served as an engineer, Union Pacific rested on its objections. Plaintiff failed to articulate any legitimate basis upon which to compel discovery of personnel files for these irrelevant employees who did not share the same responsibilities, report to the same decisionmakers, or work within the same department as Plaintiff.

discipline of engineers charged with failing to perform a Class 1 Air Brake Test for the five years preceding the subject incident through the present.

**REQUEST FOR PRODUCTION NO. 47:** The complete personnel files for each of Defendant's conductors terminated for failure to perform a Class 1 Air Brake Test for the five years preceding the subject incident through the present.

**RESPONSE:** Union Pacific objects to this request for production as overly broad, unduly burdensome, and seeks irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence, may seek documents protected by the work product doctrine or the attorney client privilege, fails to seek documents with reasonable particularity, seeks confidential and personal information concerning individuals not parties to this lawsuit, and seeks information that is disproportionate to the needs of the case considering the factors in Fed. R. Civ. P. 26(a)(l).

**SUPPLEMENTAL RESPONSE:** Union Pacific is withholding information based on its objections. Subject to and without waiving its objections, Union Pacific is working on a list of conductors (without full names) disciplined for failing to perform a Class 1 Air Brake Test during the five years preceding Plaintiff's incident.

*Dkt. 21-2*, at P. 16–19; *Dkt. 21-4*, at P. 35–38.

Inexplicably, Plaintiff failed to address any of these objections and instead directs the Court's attention to various cases that she contends stand for the proposition that information about *all* of Union Pacific's conductors who engaged in similar misconduct must be produced. Plaintiff's citations are misplaced and her reliance on them serves to illustrate her misunderstanding as to the need for case-by-case proportionality in propounding discovery. For instance, Plaintiff cited *Davis v. Precoat Metals, a Div. of Sequa Corp.*, 2002 WL 1759828 (N.D. Ill. July 29, 2002) to support her belief that the chart prepared by Union Pacific is inadequate. *See Dkt. 21*, at P. 9–10, n. 8. Plaintiff neglected to identify the fact that discovery of personnel files in that case was deemed warranted because the plaintiffs brought their lawsuit against their employer on a class-action basis. *Id.* at 2. Thus, unlike the relevant disparate *treatment* analysis required under Plaintiff's

claims at bar, personnel files in *Davis* were sought in connection with plaintiffs' Title VII class action.

Plaintiff's reliance on *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165 (D. Conn. 2005) and *Barfoot v. Boeing Co.*, 184 F.R.D. 642 (N.D. Ala. 1999) is also misplaced. In *Ruran*, unlike the extensive discovery Plaintiff seeks across all of Union Pacific's locations, the burden of producing personnel files in that action was limited to **two employees** from a single religious congregation with one location. *Id.*, *Dkt. 23-2*, at P. 11, 3:03-CV-452 (D. Conn. Sept. 8, 2004). Similarly, in *Barfoot*, the plaintiff limited his discovery requests to certain personnel files for employees within Boeing's Huntsville, Alabama location, which the court noted was "not one of the defendant's major facilities." *Id.* at 643–44. Finally, Plaintiff cited *Blackorby v. BNSF Ry. Co.*, 2015 WL 58601 (W.D. Mo. Jan. 5, 2015) and *Heim v. BNSF Ry. Co.*, 2014 WL 6949044 (D. Neb. Dec. 8, 2014) to discuss the burden she carries in proceeding on her FRSA claim. That Plaintiff must establish a discriminatory animus in proceeding with her FRSA claim is unremarkable, and in *Blackorby*, the court did not consider any discovery disputes.

Union Pacific is in complete agreement, however, with respect to *Heim*'s import in resolving Plaintiff's disputes regarding the Company's responses to Interrogatory Nos. 20 and 21 and Request Nos. 43, 44, 45, 46, and 47. Union Pacific submits that *Heim* precisely demonstrates why Plaintiff's Motion must be denied. There, the plaintiff moved for an order requiring the defendant to produce "the discipline records for BNSF's employees who reported injuries, any FRSA complaints they filed, and information concerning the demerits BNSF gave him because he was injured" for a five-year period across the company's entire workforce of over 40,000 employees. *Id.* at *1. Like Union Pacific here, the railroad defendant in *Heim* objected to this

request "as overbroad, encompassing irrelevant information, and demanding disclosure of private and confidential information for non-party employee." *Id.*

The court, after admonishing plaintiff's counsel for failing to meet her good faith conference requirements prior to filing her motion to compel,[7] considered the merits of Heim's arguments—*e.g.*, whether disciplinary records for all other BNSF employees who sustained FRA-reportable injuries for five years prior to the filing of his complaint was necessary and relevant in order to draw a correlation between being injured and being disciplined. *Id.* at *6. The railroad defendant argued that these requests for company-wide documents encompassed irrelevant information because the request was "not limited to the timeframe, geographic location, decision-maker, work being performed, or collective bargaining agreement applicable to Heim's employment, accident, and discipline." *Id.* at *7. First, the court observed that company-wide data are usually not helpful in employment cases because those who make employment decisions vary across divisions, and that discovery should be limited "to the local facility where plaintiff was employed" in the absence of any showing of the need for regional or nationwide discovery. *Id.* at *7 (citing *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997) and *Sallis v. University of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005)).

The court also noted that merely claiming that an adverse employment action arose from a company's nationwide policy or its interpretation fails to demonstrate a need for nationwide or regional discovery. *Id.* (citing *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 794 (8th Cir. 2009)). Because Heim, like the Plaintiff in the instant action, was charged locally, participated in the

---

[7] The district court observed that the parties communicated about their discovery disputes through their telephonic and written discussions, but nevertheless found that the failure to discuss specific issues with each particular request was "insufficient to satisfy the meet and confer requirements" imposed by its Local Rules. *Id.* at *5.

discharge hearing locally, and was disciplined based on findings made on a local level, he "failed

to show any particular need to conduct discovery concerning whether, on a company-wide basis,

other injured BNSF employees faced disciplinary charges for reporting a personal injury." *Id.* at

*8. Accordingly, the court found that Heim's requests for nearly identical information outlined in

Interrogatory Nos. 20 and 21 failed to satisfy Rule 26's relevance requirement.

The court also found that Heim's requests were overbroad and unduly burdensome, and it

properly held that—where the breadth of a request is obvious and excessive on its face—"[a] party

resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed

support" to raise and stand on its objections. *Id.* at *8 (citations omitted). Importantly, and even

though the requested records were maintained in the ordinary course of business, the court held

that "the mere existence of the documents does not render the requested discovery reasonable,

easily produced, and available to the plaintiff upon demand." *Id.* This outcome was particularly

compelled because the records and information at issue involved confidential personnel matters:

> [E]ven where company records are shown to be relevant, Courts have been
> reluctant to permit discovery, when the requested disclosures would intrude
> upon the privacy interests of other, non-party employees.... [T]he personnel
> files of an entire class of employees should not be produced, even in an
> employment discrimination proceeding, absent a compelling showing of
> relevance.... As a consequence, **a party seeking the discovery of**
> **personnel information must demonstrate, notwithstanding the breadth**
> **of discovery, that the value of the information sought would outweigh**
> **the privacy interests of the affected individuals.**

*Id.* at *8–9 (citing *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997) and

*Shakman v. City of Chicago*, 2014 WL 711010, at *4 (N.D.Ill. 2014) (holding employees have a

recognized interest in keeping their personal information from personnel files out of the public

domain)) (emphasis added). As the court properly observed, "[i]n the ordinary workplace setting,

an employee has a privacy interest in her employment records, and disciplinary actions generally are not public." *Id.* at *9 (citations omitted).

Finally, the court credited BNSF for attempting to reach a compromise on the disputed discovery items by producing a chart that identified disciplinary action imposed on a number of employees within the local division in which Heim worked. *Id.* at *9. Against this backdrop, the court denied Heim's motion to compel and observed as follows:

> It is the parties' obligation to draft, serve, and respond to discovery. And before a motion to compel is filed, the parties must exhaust all reasonable attempts to resolve the discovery dispute without court intervention. If, even after the meet and confer process, a party files a motion demanding answers to patently overbroad discovery, court orders which re-draft and narrow the discovery provide no incentive to draft targeted discovery at the outset, or to engage is good faith discussions to resolve discovery disputes.

*Id.*

Union Pacific submits that this Court's analysis of Interrogatory Nos. 20 and 21 and Request Nos. 43, 44, 45, 46, and 47, should start and end with *Heim*. As was the case in *Heim*, Plaintiff's disputed discovery requests are overbroad and excessive on their face. Consequently, it was Plaintiff's burden—not Union Pacific's, and not the Court's—to articulate a basis upon which to require the production of confidential personnel files on a Company-wide basis (which exceeds 42,000 employees and individual personnel files) for five years prior to Plaintiff's alleged incident. Plaintiff failed to meet this burden, and she failed to articulate any justification to support her excessive requests.

Plaintiff also failed to articulate why Union Pacific's proposed accommodation— producing a list of comparators—failed to allay her purported need for additional records. While she may *now* "be willing to enter into a mutually agreed-upon protective order regarding the production of personnel files of other employees[,]" *Dkt. 21*, at P. 10, n. 9, that offer should have

been made during the course of a requisite good-faith conference, and not in a footnote in her Brief. Notwithstanding, while a protective order would be necessary in order to produce confidential employee records, a protective order would only address issues related to confidentiality, and Plaintiff fails to confront the fact that her Requests would require Union Pacific to engage in a substantial and time-consuming review to identify and produce all of the records that she seeks.

Plainly, in this single-plaintiff action, Plaintiff's discovery requests—which have already required Union Pacific to produce over 4,600 pages—are disproportionate to the needs of this litigation in light of the amount in controversy, issues at stake, and burden of production. For these reasons, the Court should deny Plaintiff's Motion as to Interrogatory Nos. 20 and 21 and Request Nos. 43, 44, 45, 46, and 47.

**7.     Union Pacific Will Produce its Privilege Log within Five Business Days and Therefore Obviate the Need for the Court to Compel this Disclosure.**

Plaintiff also seeks to compel the production of Union Pacific's privilege log. Union Pacific will produce its privilege log, and therefore render this aspect of Plaintiff's Motion moot, within five (5) business days from the date of this Response. Union Pacific notes, however, that Plaintiff could have avoided filing her Motion on this basis if she faithfully embraced Local Rule 7.2(g)'s good faith conference requirement. Specifically, prior counsel was engaged in the process of finalizing Union Pacific's privilege log when Plaintiff filed her Motion and, if Plaintiff provided Union Pacific with a reasonable opportunity to produce same, this aspect of Plaintiff's discovery dispute could have been resolved without the Court's involvement. Undersigned counsel, however, entered his appearance shortly after Plaintiff filed her Motion, and his efforts in the interim have been dedicated to drafting this Response.

245334                                               33

Because Union Pacific will voluntarily produce its privilege log within five (5) business days from the date of this Response, the Court should deny Plaintiff's Motion, in part, as moot.

C.     **Plaintiff's Rule 30(b)(6) Topics are Facially Excessive and Her Failure to Confront Union Pacific's Narrow Objections and Proposed Compromises Should Preclude the Relief Requested in Her Motion.**

Plaintiff's final contentions relate to her Rule 30(b)(6) Notice of Deposition, which outlines thirty-two broad categories of information (Topics) for which she seeks to compel testimony from Union Pacific's corporate representatives. Of those Topics, Plaintiff's Motion takes exception with Union Pacific's responses and objections to Nos. 2, 4, 5, 13, 14, 22, 27, 28, 31, and 32. In this respect, Plaintiff generally argues that because Union Pacific did not preemptively file a Motion for Protective Order to limit the scope of Plaintiff's Topics to relevant information that is proportional to the needs of this case, "its refusal to designate witnesses on certain topics . . . is procedurally defective and unavailing." *Dkt. 21*, at P. 10–11. In support of this position, Plaintiff cites two inapposite cases: *Lee v. Nucor-Yamato Steel Co. LLP*, 2008 WL 4014141 (E.D. Ark. Aug. 25, 2008), which contains no analysis as to the procedure through which a party must object to an overbroad Rule 30(b)(6) notice; and *Criterion 508 Sols., Inc. v. Lockheed Martin Servs., Inc.*, 255 F.R.D. 489 (S.D. Iowa 2008), which did not involve a Rule 30(b)(6) deposition.

Taking Plaintiff's argument to its logical conclusion would inherently render the good faith conference requirements outlined in Rule 37(a)(1) and Local Rule 7.2(g)—as well as the proportionality obligations imposed on all parties to litigation under Rule 26—utterly meaningless. Accordingly, and contrary to Plaintiff's contentions, parties may "preserv[e] objections on certain topics, produc[e] a witness . . . and wait[] until after the deposition to see if any remaining issues [can] be resolved without court intervention." *Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D. 59, 62 (D. Mass. 2011). This is precisely the procedure that Union Pacific intended to

follow in responding to Plaintiff's Notice. Specifically, Union Pacific preserved its objections to the disputed Topics, but it nevertheless offered to produce competent Rule 30(b)(6) deponents for the majority of those items outlined in her Notice. Accordingly, Plaintiff's suggestion that Union Pacific's failure to file a motion for protective order rendered its "refusal to designate witnesses on certain topics . . . procedurally defective and unavailing" is without merit.

Rather, and as outlined below, Union Pacific interposed multiple valid objections to the disputed Topics, including Plaintiff's: (a) failure to describe various categories of inquiry with reasonable particularity; (b) use of vague and overbroad descriptions like "including but not limited to" and "and/or"; (c) designation of irrelevant topics that exceed the scope of this action in substance and in temporal duration; (d) designation of legal questions for which no corporate representative is competent to testify; (e) intent to seek confidential information relating to claims by individuals who are not parties to this litigation; (f) failure to limit the scope of various topics to those employees who are similarly-situated to Plaintiff in all material respects; (g) attempt to elicit testimony that is more appropriately provided in the form of a written records that Union Pacific produced in the course of discovery; (h) designation of areas of inquiry that would invade the attorney-client and work-product privileges; and (i) general designation of items for inquiry that exceed the proportional needs of this litigation, to wit:

| TOPICS OUTLINED IN PLAINTIFF'S RULE 30(b)(6) NOTICE | SUMMARY OF UNION PACIFIC'S OBJECTIONS |
| --- | --- |
| **NO. 2:** The facts and circumstances surrounding Plaintiff's removal from Defendant's service after July 5, 2017, including the work and equipment at issue, investigations conducted by Defendant, including interviews, managers/supervisors reports, photographs, data recording/collection/analysis (including but not limited to event recorder data, audio recording(s), video recordings, dispatcher | • Failure to describe with reasonable particularity;<br>• Use of the phrase "including but not limited to";<br>• Invasion of the attorney-client or work-product privileges; and<br>• Relevance as to hot-box data. |

| | |
|---|---|
| recordings, hot box data), discipline consideration and assessment of responsibility for any purported wrongdoing. | |
| **NO. 4:** All inspections, maintenance, repairs and defects of the subject railcar involved in Plaintiff's injury incident for three years prior to the incident through the present date. | • Overbreadth with respect to inspections, maintenance, repairs, and defects that are not related to handbrakes; and<br>• Overbreadth as to temporal limitation. |
| **NO. 5:** All recommendations, standards, specifications or regulations pertaining to inspecting, maintaining, repairing and/or performing preventive maintenance or repairs relating to Defendant's wheel-style handbrakes within three years prior to the subject incident through the present, from the manufacturer/reseller/maintainer of said equipment and/or the FRA, AAR, OSHA, or other agency. | • Failure to describe with reasonable particularity;<br>• Vagueness because of its "and/or" description and in its use of the terms "recommendations," "preventative repairs," and "maintainer of said equipment";<br>• Designation of legal questions;<br>• Invasion of the attorney-client or work-product privileges; and<br>• Overbreadth and disproportionality regarding all aspects of handbrakes. |
| **NO. 13:** A list of claims of injury reported by Defendant's employees while operating wheel-style handbrakes, including the date of reported injury, the circumstances of the incident, the type of injury, and the identity of the injured party, for the period of five years before June 20, 2017 through the present; including the injured party's written report of injury. | • Confidential information relating to claims by individuals who are not parties to this litigation;<br>• Overbreadth with respect to temporal limitation;<br>• Overbreadth, undue burden, and relevance because the testimony sought exceeds the proportional needs of this case, particularly because the Topic is not limited to those whose employment and claimed injuries are similar to Plaintiff's in this matter;<br>• Relevance because whether other employees claimed an injury has no bearing on this litigation; and<br>• The testimony sought is more appropriately provided in the form of a list itself, which was already produced to Plaintiff during the course of discovery. |
| **NO. 14:** All reports, documents, notes or other materials which contain information from any of Defendant's employees advising Defendant, its foremen, or supervisors, of safety concerns, injuries, problems, complaints, or defects related to the use of | • Failure to describe with reasonable particularity;<br>• Vagueness in its reference to "other materials" and "including"; |

| | |
|---|---|
| wheel-style handbrakes, including the subject handbrake, for the period of five years prior to June 20, 2017 through the present. | • Confidential information relating to claims by individuals who are not parties to this litigation;<br><br>• Relevance because whether other employees reported issues with handbrakes on other railcars has no bearing on this litigation;<br><br>• Overbreadth and undue burden because the testimony sought exceeds the proportional needs of this case;<br><br>• Overbreadth with respect to temporal limitation; and<br><br>• The testimony sought is more appropriately provided in the form of a written report, which was produced to Plaintiff during the course of discovery. |
| **NO. 22:** The "hot box reader" data for the July 5, 2017 trip. | • Vagueness in the term "trip" and relevance. |
| **NO. 27:** Defendant's policies, practices, and procedures for inspecting, maintaining and repairing wheel style handbrakes for a period of five years prior to June 20, 2019 through the present date. | • Overbreadth with respect to temporal limitation. |
| **NO. 28:** The person(s) responsible for determining whether to report Plaintiff's on-duty injury to the FRA, whether Plaintiff's on-duty injury was reported to the FRA, and all documents, reports, logs or other materials in the possession of Defendant pertaining to Plaintiff's on-duty injury incident which were prepared or are kept pursuant to FRA regulations or reporting guidelines, including Form 6180.98 and all internal forms, documents and notes prepared in connection with Plaintiff's June 20, 2017 injury incident. | • Overbreadth, undue burden, and relevance because the testimony sought exceeds the proportional needs of this case, particularly in light of Union Pacific's production of FRA Form 6180.98 for this incident;<br><br>• Relevance because whether Plaintiff reported an injury is not in dispute; and<br><br>• Invasion of the attorney-client or work-product privileges. |
| **NO. 31:** All employees who reported on-duty injuries and received discipline or were dismissed within one year of reporting his or her injury. | • Failure to describe with reasonable particularity;<br><br>• Overbreadth and undue burden because the testimony sought exceeds the proportional needs of this case; and<br><br>• Relevance because it designates matters far beyond those at issue in this case. |
| **NO. 32:** All FRSA claims filed against Defendant in the past five years. | • Failure to describe with reasonable particularity; |

| | • Overbreadth and undue burden because the testimony sought exceeds the proportional needs of this case; and |
| | • Relevance because it designates matters far beyond those at issue in this case. |

As demonstrated, Plaintiff's take-it-or-leave-it approach to resolving discovery disputes frustrates the purposes of Rule 26's proportionality requirement and fails to account for her own burden in seeking to depose a corporate witness. "Rule 30(b)(6) imposes burdens on both the discovering party and the designating party. The party seeking discovery is required to describe 'with reasonable particularity the matters for examination.'" *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014) (citing FED. R. CIV. P. 30(b)(6)). The purpose of providing a 30(b)(6) deposition notice is to "give the opposing party notice of the areas of inquiry that will be pursued so that it can identify appropriate deponents and ensure they are prepared for the deposition." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010). One must be able to "identify the outer limits of the areas of inquiry noticed" absent which, "compliant designation is not feasible." *Reed v. Bennett,* 193 F.R.D. 689, 692 (D. Kan. 2000). Stated differently, "[i]f the noticing party does not describe the topics with sufficient particularity or if the topics are overly broad, the responding party is subject to an **impossible task.**" *Trustees of Bos. Univ.*, 2014 WL 5786492, at *3 (emphasis added).

Consequently, courts have held that certain phrases in Rule 30(b)(6) notices are exemplary of overbroad requests, and do not meet the requirement of "reasonable particularity," like the phrase "including but not limited to." *Dongguk Univ.*, 270 F.R.D. at 74, 77 n.2, 79 n.3 (citations omitted); *see also Fed. Ins. Co. v. Delta Mech. Contractors, LLC*, 2013 WL 1343528, at *4 (D.R.I. Apr. 2, 2013) (noting that many of the noticed topics include the directive that "[t]his topic includes, but is not limited to," which is "precisely the sort of overbroad Rule 30(b)(6) notice that

'subjects the noticed party to an impossible task.'") (quoting *Reed*, 193 F.R.D. at 692). Courts have similarly found that "discovery requests seeking information 'related to' a particular topic are overly broad because they do not provide a basis upon which an individual or entity can reasonably determine what information may or may not be responsive." *Trustees of Bos. Univ.*, 2014 WL 5786492, at *3 (citations omitted).

In addition to these important prudential guideposts, Rule 26(b)(2)(C) requires district courts to limit the extent of discovery if a request is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" FED. R. CIV. P. 26(b)(2)(C). Rule 30(b)(6) depositions are particularly burdensome on the responding party and its representatives, and for that reason, courts routinely find "Rule 30(b)(6) notices to be unduly burdensome [where they] merely request the duplication of other information already obtained through other discovery methods," or "[w]here the notice seeks information [that] could more easily be obtained from another source." *Dongguk Univ.*, 270 F.R.D. at 74; *see also United States v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992) (rejecting defendant's motion to compel Rule 30(b)(6) deposition on the grounds that discovering the topic at issue through deposition was "highly inefficient and burdensome," particularly where the "relevant factual information" was "available in the documents provided").

Against this backdrop, Plaintiff's Topics are patently excessive. For instance, in Topic No. 5, Plaintiff seeks to compel testimony regarding "[a]ll recommendations, standards, specifications or regulations pertaining to inspecting, maintaining, repairing and/or performing preventive maintenance or repairs relating to Defendant's wheel-style handbrakes within three years prior to the subject incident through the present, from the manufacturer/reseller/maintainer of said

equipment and/or the FRA, AAR, OSHA, or other agency." *Dkt. 21-5*, at P. 3. In Topic No. 13, Plaintiff seeks to compel testimony regarding a list of claims of injuries reported by Union Pacific's employees who operated wheel-style handbrakes (with specific details regarding each claim) for over **seven** years. *Id.* at P. 5. For the same duration of time, Plaintiff believes that Union Pacific must produce corporate witnesses to testify regarding "[a]ll reports, documents, notes, or other materials" regarding safety concerns, injuries, problems, complaints, or defects related to the use of wheel-style handbrakes pursuant to Topic 14. *Id.* Topic Nos. 30 and 31 would similarly require Union Pacific to prepare its designees to testify regarding *all* employees who received discipline or who were dismissed within one year following a report of an on-duty injury— backwards in perpetuity since Union Pacific's founding—along with all testimony regarding all FRSA claims filed against the Company for a period of five years. *Id.* at P. 10.

No single witness or reasonable group of witnesses could fully prepare and discuss the Topics in their current form, and "[i]t is not reasonable to expect one or more witnesses to remember and testify about every one of these facts." *Trustees of Bos. Univ.*, 2014 WL 5786492, at *4. It would be unreasonable to require a 30(b)(6) witness to identify and interview dozens of employees about communications they had over five years ago, and it would be even more unreasonable to require the Union Pacific's deponents to memorize those responses and then repeat them at the deposition. Courts have refused to require a 30(b)(6) deponent to engage in such preparation. *See Equal Employment Opportunity Comm'n v. Am. Int'l Grp., Inc.*, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994) ("Rule 30(b)(6) is not designed to be a memory contest. It is not reasonable to expect any individual to remember every fact in an . . . investigative file"); *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154, at *3 (N.D. Cal. May 18, 2011) (it would be overly broad and unduly burdensome for a 30(b)(6) deponent to "interview numerous

employees involved in the design and marketing of five different products and to identify and review the communications of those employees").

At bottom, Plaintiff's claims are limited to an alleged back injury and her belief that her termination was improper. Union Pacific has invested significant time and expense into providing Plaintiff with over 4,600 pages of documents, substantive and thoughtful Interrogatory responses, and supplementation where warranted. On these sparse claims, Plaintiff cannot reasonably articulate a basis upon which to engage in such extensive and disproportionate discovery. For these reasons, the Court should deny Plaintiff's Motion as to her Rule 30(b)(6) Topics and order her to narrow her requests in good faith based on the specific needs of this litigation.

## IV.    CONCLUSION

Plaintiff's Motion—in seeking the Court to order additional discovery (over and above the 4,600 pages of records already produced) in connection with **twenty-five** distinct Requests—is a relic of the "scorched Earth approach to discovery" that the drafters of Rule 26 sought to remove in the legal culture. *See Medicinova Inc.*, 2017 WL 2829691, at *5–6. Plaintiff could have meaningfully engaged in the good faith conference process to avoid filing her Motion, or at least to narrow its scope, but rather than focusing her Requests on the proportionate needs of this case, Plaintiff instead decided to seek the Court's intervention. Because Plaintiff failed to confront the majority of Union Pacific's meritorious objections, her Motion to Compel should be denied.

Respectfully submitted

Abtin Mehdizadegan (Ark. Bar No. 2013136)
**CROSS, GUNTER WITHERSPOON**
**& GALCHUS, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: (501) 371-9999/Fax: (501) 371-0035
E-mail: abtin@cgwg.com